

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **RAHIEM BROOKS** | : | **NO. 05-696** |

**FILED**

FEB 2 6 2009

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

### MEMORANDUM AND ORDER

Gene E.K. Pratter, J.                                                                 February 26, 2009

    A jury convicted Rahiem Brooks on October 29, 2008 on six counts of possessing and uttering counterfeit securities in violation of 18 U.S.C. §513(a).  Mr. Brooks, appearing pro se but with the benefit of able stand-by counsel, moves for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, a motion that the Government opposes.  While acknowledging Mr. Brooks' respectful stick-to-it-iveness and innovative arguments, the Court denies the motion because, on the basis of the whole of the evidence, when viewed in the light most favorable to the Government, there is substantial evidence in the trial record from which any rational trier of fact could have concluded that Mr. Brooks was guilty beyond a reasonable doubt.

### FACTUAL AND PROCEDURAL BACKGROUND

    The jury heard and examined evidence that Mr. Brooks used six phony checks, each made to look and be accepted like a check written on conventional PNC Bank personal checking accounts.  No such accounts as were shown on the faces of the checks actually existed.

According to the evidence presented to the jury at trial, Mr. Brooks passed six counterfeit PNC Bank checks at Philadelphia area Marshalls and T.J. Maxx stores in 2005 in order to fraudulently purchase various merchandise without actually paying for the items. He then returned some of the goods for cash "refunds." Mr. Brooks poses various grounds for arguing that he is entitled to a judgment of acquittal pursuant to Rule 29(c). Each of these arguments is addressed below.

## LEGAL STANDARD

When considering a Rule 29 motion, the admonition to the trial court is to be "ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v. Jannotti, 673 F. 2d 578, 581 (3d Cir. 1982)). For that reason, among others, the Court must view all of the evidence introduced at trial in the light most favorable to the Government and uphold the verdict as long as to do so is consistent with that which "any rational trier of fact" would have concluded. United States v. Gibbs, 190 F. 3d 188, 197 (3d Cir. 1999); United States v. Frorup, 963 F.2d 41, 42 (3d Cir. 1992). Accordingly, a defendant such as Mr. Brooks - - whether pro se or fully counseled by an attorney - - bears a "very heavy burden" when he challenges the sufficiency of the evidence on which the jury rendered a guilty verdict. United States v. Coyle, 63 F. 3d 1239, 1243 (3d Cir. 1995). Only where the Governments's failure of proof is clear should the jury's verdict be disturbed by a Rule 29 judgment of acquittal. United States v. Smith, 294 F. 3d 473, 477 (3d Cir. 2002); United States v. Leon, 739 F. 2d 885, 891 (3d Cir. 1984).

## DEFENSE GROUNDS FOR ACQUITTAL

A.  Evidence of Requisite Federal Jurisdiction

Mr. Brook's first argument reflects a keen, if not practiced, eye for detail: He contends that the evidence at trial was not sufficient to establish federal jurisdiction. He argues that a conviction pursuant to 18 U.S.C. §513(a) requires the Government to prove that PNC Bank was federally insured at the time of his 2005 activities and that the six checks at issue "affected" the Bank. The Government counters Mr. Brooks' formulation of the issue by correctly pointing out that what Section 513(a) actually requires is that the checks at issue were of an ongoing organization that operates in or whose activities affected interstate commerce. One manner of proving this would be to show that PNC Bank was federally insured. United States v. Spinello, 265 F.3d 150, 158-159 (3d Cir. 2001). Notably, in this trial, even Mr. Brooks' own evidence, namely Ex. D-1, reflected that PNC Bank has been F.D.I.C. insured "since 1934" until 2008, the effective date of the exhibit. See United States v. El-Ghazali, 142 Fed. Appx. 44, 45-46 (3d Cir. 2005). Given the common-sense understanding of the meaning of the word "since" as being indicative of the continuous nature of a condition from a prior point in time to another point in time, the jury easily could have concluded that PNC's insured status commenced in 1934 and persists uninterrupted to the present.

As further evidence of PNC Bank's interstate commercial status, the jury also had the testimonial evidence provided by PNC Bank employee Deborah Gontek. Ms. Gontek testified that PNC operates in a number of states and sends money from state to state. While Mr. Brooks tries to make much of Ms. Gontek's pattern of speech of speaking in the present tense (i.e., at the time of her 2008 trial testimony), and thus argues that her testimony did nothing to

3

provide the jury with information about PNC's interstate commerce status in 2005, the unmistakable context of Ms. Gontek's testimony would have permitted the jury to conclude reasonably that the information she imparted about her employer, PNC Bank, was accurate for the relevant time period for this case, namely 2005. For example, Ms. Gontek explained that she had worked at PNC Bank since 1998, and she was questioned about the checks at issue in the case which had been written in 2005. Thus, given this context, Ms. Gontek's testimony that PNC is a federally insured bank that operates in several states and transfers money from state to state reasonably could permit the jury to conclude that these features of PNC's business activities were true for 2005, a time about which she was knowledgeable. Compelling case law demonstrates to this Court's satisfaction that it would be wholly inappropriate in this case to parse Ms. Gontek's testimony with such hyper-technicality as would be required to accept the defense argument in this regard. See e.g., United States v. Harper, No. 05-170-02, 2007 WL 3103240, **6-7 (E.D. Pa. Oct. 23, 2007); United States v. Bortnick, No. 03-CR-0414, 2005 WL 1693924, **7-8 (E.D. Pa. July 20, 2005). See also, United States v. Abuhouran, 162 F.3d 230, 233-34 (3d Cir. 1998).[1]

---

[1] This result is further supported by the invocation of Federal Rule of Evidence 201 which permits the court to take judicial notice of any fact "not subject to reasonable dispute in that it is...capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." United States v. Pozsgai, 999 F.2d 719, 731 (3d Cir. 1993) (quoting Fed. R. Evid. 201(b)). The Government has referenced just such sources by supplying PNC's 10-K annual reports to the Securities and Exchange Commission for 2004 and 2005 that state that PNC's subsidiary banks are FDIC-insured. Our Court of Appeals has accepted the propriety of a court taking judicial notice of PNC's federally-insured status on the basis of SEC filings. See United States v. Behmanshah, 49 Fed. Appx. 372, 376 n.2 (3d Cir. 2002). Though the Court notes that Mr. Brooks' argument on this issue caused opposing counsel at least a moment's discomfiture at the time it was first raised after the record was closed, upon cooler and calmer analysis, it is undeniable that there is no reasonable or rational basis to doubt PNC's federally-insured status.

B.     Whether The Checks "Affected" PNC Bank

Mr. Brooks' next argument is that the Government was obliged, but failed, to prove that the six offending checks had any "affect" on PNC Bank. Mr. Brooks misapprehends the demands of Section 513. There is no statutory requirement that the Government prove that the possessing or use of the counterfeit checks had an effect on the purported issuing bank. While the Government acknowledges that there may be conflicting case law among some circuits as to whether a conviction for violating Section 513 may stand if premised upon checks written on accounts at non-existent banks, see, e.g., United States v. Barone, 71 F.3d 1442 (9th Cir. 1995); United States v. Van Shutters, 163 F.3d 331 (6th Cir. 1998); United States v. Lee, 439 F.3d 381 (7th Cir. 2006), here there is no credible argument to be made that there is no "PNC Bank."

Moreover, even if Mr. Brooks' argument is given some credence, during this trial the jury heard evidence through the testimony of both Christopher Jacobson and Debroah Gontek that PNC Bank was "affected" by the checks at issue. Indeed, these witnesses confirmed that the checks were presented to PNC for payment, were sent to the national banking clearinghouse and later discovered to be counterfeit.

Accordingly, Mr. Brooks' Section 513 arguments must be rejected.

C.     The Federal Government's Authority To Prosecute Mr. Brooks

Mr. Brooks contends that the federal government's prosecution of him represented an unconstitutional encroachment by the federal government into realms regulated by the states. Essentially, Mr. Brooks contends that his conduct did not "substantially affect" interstate commerce and, for that reason, the Commerce Clause does not give the federal government the

5

requisite prosecutorial power. As a corollary argument, Mr. Brooks also argues that banks are not instrumentalities of interstate commerce.

The Government is correct when it asserts that it had authority to prosecute Mr. Brooks. As long as the statutorily regulated conduct at issue (here, the making, possessing or uttering forged or counterfeit securities) has a substantial effect on interstate commerce, the requisite interstate commerce nexus is satisfied even if a defendant's own specific foray into the offending conduct may not. There is no credible argument that the conduct proscribed by Section 513(a) does not substantially affect interstate commerce. See, e.g., United States v. Kovach, 208 F.3d 1215, 1217 (10th Cir. 2000); United States v. Hancock, 132 F.Supp. 2d 279, 284 (S.D.N.Y. 2001). That nexus is not broken even if a defendant's conduct had only a de minimis, though real, effect on interstate commerce. Spinello, 265 F.3d at 159 n.7; Kovach at 1217-1218.

Here, the jury learned that Mr. Brooks used six counterfeit checks to "purchase" goods or to finagle funds from Marshalls and T.J. Maxx. Those stores, of course, operate in interstate commerce, and by Mr. Brooks' taking the stores' assets, their interstate activities were affected. See, e.g., United States v. Haywood, 363 F.3d 200, 210-11 (3d Cir. 2004); United States v. Farmer, 73 F.3d 836, 843-44 (8th Cir. 1996). In other ways, however, other trial evidence also showed that interstate commerce was affected by the merchants having presented the counterfeit checks for payment via an out-of-state clearinghouse company, by the checks having also been presented to PNC for deposit and/or payment and, ultimately, by the false checks having been forwarded to the Florida business retained to keep the counterfeit checks as may have proven necessary. The evidence sufficiently demonstrates not only that Mr. Brooks'

6

conduct implicated interstate commerce, but that the overall type of conduct sought to be curtailed by Section 513 can have a good deal more impact on interstate commerce.

Finally, there is no merit to the defense argument that banks in general or PNC in particular are not instrumentalities of interstate commerce. See, e.g., Spinello, at 158-159; United States v. Watts, 256 F.3d 630, 633-34.

## CONCLUSION

Though Mr. Brooks has demonstrated considerable patience and skill as he endeavored to comprehend the intricacies of statutes and the significance of trial testimony, his efforts ultimately must be declared to be unavailing. The Government had the power to prosecute him for his conduct and the jury had sufficient evidence on which to convict him beyond a reasonable doubt. Therefore, Mr. Brooks' Rule 29 motion will be denied by way of the accompanying Order.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| RAHIEM BROOKS | : | NO. 05-696 |

FILED
FEB 26 2009
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

**O R D E R**

AND NOW, this 26th day of February, 2009, upon consideration of Mr. Brooks' Motion for Judgment of Acquittal Pursuant to Rule 29(c) (Docket No. 109), and the Government's Response thereto (Docket No. 111), it is **ORDERED** that the Motion is **DENIED** for the reasons set forth in the accompanying Memorandum.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge